



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| ROBERT C. SMITH | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EVB | ) |
| | ) |
| a Virginia corporation | ) |
| | ) |
| Serve: | ) |
| Delores Nabors | ) |
| Registered Agent | ) |
| 7271 Hanover Green Drive | ) |
| Mechanicsville, Va 23111-0000 | ) |
| | ) |
| and | ) |
| | ) |
| ARCHIE C. BERKELEY, JR. | ) |
| | ) |
| Serve: | ) |
| Archie C. Berkeley, Jr. | ) |
| Berkeley and Degraetini | ) |
| 1301 N. Hamilton Street | ) |
| Suite 200 | ) |
| Richmond, Virginia 23230-3959 | ) |
| | ) |
| Defendants | ) |

Civil Action No. 3:09CV554(JRS)

## COMPLAINT

COMES NOW the Plaintiff, ROBERT C. SMITH (hereafter "Smith") by counsel and as and for his Complaint against Defendants alleges as follows:

1.    This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Debt Collection Practices Act (hereafter the "FDCPA").

## JURISDICTION

2.     The jurisdiction of this Court is conferred by 15 U.S.C. Section 1692, 15 U.S.C. Section 1681, 15 U.S.C. 1679 and 15 U.S.C. Section 1367. Venue is proper in this District and Division, as the Defendants' violations of the law occurred in Richmond, Virginia, and the Defendants' offices and registered agent are in Mechanicsville and Richmond, Virginia.

## PARTIES

3.     The Plaintiff is a natural person and resides in Richmond, Virginia. Plaintiff owed a "debt" as defined by 15 U.S.C. Section 1692 a (5) to the Bank of Goochland (hereafter the "Debt").

4.     Upon information and belief, EVB is a Virginia corporation and operates as a State of Virginia chartered bank and is a subsidiary of Eastern Virginia Bankshares, Inc.

5.     Upon information and belief, EVB is a "debt collector" as defined by 15 U.S.C. 1692 a (6).

6.     Archie C. Berkeley, Jr. (hereafter "Berkeley") is a lawyer in Richmond, Virginia specializing in collections.

7.     On information and belief, Berkeley is a "debt collector" as defined by 15 U.S.C. Section 1692 a (6).

## FACTS

8.     On or around September 19, 2006, Smith closed on a home equity line of credit for $250,000 with the Bank of Goochland and in so doing,  was the maker of a credit line note in

the amount of $250,000 to the Bank of Goochland (hereafter "BOG Note"). A true and accurate copy of the BOG Note is attached hereto as **Exhibit A** and made a part hereof.

9.     The BOG Note is a "debt" as defined by 15 U.S.C. 1692 a (5).

10.     The BOG Note is secured by a deed of trust (hereafter "BOG DOT") recorded against Smith's personal residence at 208 S. Wilton Road in Richmond, Virginia.

11.     Piedmont Construction Services, LLC, (hereafter "PCS") a Virginia limited liability company, was a single member entity of which Smith was the manager and sole member.

12.     From July 21, 2006 through September 17, 2007, PCS was the maker of several commercial notes (hereafter the "PCS Notes") to EVB, all of which were paid off in full, on or around September 17, 2007.

13.     EVB was the beneficiary of a deed of trust (hereafter the "Wilton DOT") on Smith's residence that secured the payment of the PCS Notes.

14.     On or around September 17, 2007, EVB breached a written agreement it had with PCS and defaulted on an obligation it owed PCS to pay PCS in excess of $ 881,000.

15.     On behalf of PCS, Smith wrote EVB on September 17, 2007 (hereafter the "September 17, 2007 Memo") and in addition to demanding payment of EVB's $881,000 plus obligation to PCS, Smith also requested EVB release the Wilton DOT as the PCS notes secured by the Wilton DOT had been paid. A true and accurate copy of the September 17, 2007 Memo is attached hereto as **Exhibit B** and made a part hereof.

16.     In addition to defaulting on its $881,000 plus obligation to PCS, EVB refused to release the Wilton DOT on Smith's personal residence. Both breaches caused Smith, the sole member of PCS considerable damages in the form of lost sales of real estate, lost business

opportunities, enhanced business expenses and carrying costs, loss of credit facilities and emotional distress.

17.     On information and belief, EVB refused to release the Wilton DOT, so that EVB could put Smith and his interests under such severe financial stress that EVB would gain an advantage over Smith and force Smith into a settlement where EVB would be released of all of its monetary obligations to Smith and his interests.

18.     Prior to September 17, 2007, Smith had planned to use the money EVB owed him and subsequently defaulted on to pay off all of the debt on his residence, 208 S. Wilton Road.

19.     On information and belief, EVB purposefully defaulted on its obligations such that it could use its security interest on 208 S. Wilton Road (the Wilton DOT) to exert such pressure on Smith that Smith would deed  208 S. Wilton Road over to EVB and EVB would reap a substantial gain by reselling the property to a third party.

20.     Due to EVB's breach of its agreement to pay PCS over $881,000 and its refusal to release the Wilton DOT against Smith's residence, Smith ceased paying the monthly interest on the BOG note in late 2007.

21.     In a letter addressed to Smith on January 7, 2008 (hereafter the "BOG Default Letter"), Ken Giangulio, Vice President of the Bank of Goochland wrote Smith and declared the BOG Note to be in default. A true and accurate copy of the BOG Default Letter is attached hereto as **Exhibit C** and made a part hereof.

22.     EVB claims that it bought the BOG Note on February 29, 2008.

23.     To the extent that EVB did buy the BOG Note, EVB bought the BOG Note with the knowledge and belief that it was in default.

24.     The Bank of Goochland never reported to Smith that it had sold the BOG Note to EVB.

25.     EVB never wrote Smith to inform Smith that it had bought or believed that it had bought the BOG Note until Smith received a foreclosure notice from EVB in mid September 2008.

26.     Smith immediately requested of EVB to see the note purchase agreement and related purchase documents and EVB never provided these documents up until the time Smith (and another party) filed a lawsuit against EVB on June 19, 2009.

27.     Smith continued to use the BOG line of credit and the BOG line of credit remained open through December 31, 2008, as evidenced by the Essex Bank (successor in interest to the Bank of Goochland) line of credit statement which Smith received on August 4, 2009, a copy of which is attached hereto as **Exhibit D** and made a part hereof.

28.     On information and belief, on or around August 27, 2008, EVB appointed a substitute trustee, Berkeley to begin foreclosure proceedings against the Wilton Property.

29.     At the time of Berkeley's appointment as substitute trustee, the BOG Note had a $0 balance due and owing as indicated on the attached Bank of Goochland bank statement attached hereto as **Exhibit E** and made a part hereof.

30.     On or around September 15, 2008, Smith received a foreclosure notice from Berkeley (hereafter the " September 07 Foreclosure Notice") demanding a payoff amount in excess of $276,000 allegedly due under the BOG Note. A true and accurate copy of the September 07 Foreclosure Notice is attached hereto as **Exhibit F** and made a part hereof.

31.     On or around the time Smith received the September 07 Foreclosure Notice from Berkeley, the balance on the BOG note was approximately $4,000.  A true and accurate copy of

the September 07 BOG Note bank statement is attached hereto as **Exhibit G** and made a part hereof.

32.     Despite EVB's knowledge that Smith was represented by an attorney, Robert H. Pearsall (hereafter "Pearsall"), EVB contacted Smith directly and never communicated with or made any efforts to communicate with Smith's attorney, Pearsall, in violation of 15 U.S.C 1692c (a) (2).

33.     Smith immediately called EVB and on 9/17/2008 wrote Jimmy Bartoo, Vice President and Collections Manager of EVB (hereafter "Bartoo") an email which specifically requested documents related to EVB's alleged purchase of the BOG Note, as well as closing documents, title work and appraisal as these items related to any purchase of the BOG Note by EVB.

34.     On or around the time that Smith received notice of the September 07 Foreclosure Notice, Bartoo made a number of threats to foreclose on Smith's residence and demanded Smith pay EVB over $ $276,000   for the satisfaction of the obligation under the BOG Note.

35.     In response to Smith's 9/17/08 email to Bartoo, on 9/18/08, Bartoo sent Smith a single page outline of the alleged payoff amount of the BOG Note ($ 276,410.49) a copy of which is attached hereto as **Exhibit H**   and made a part hereof.

36.     Bartoo's 9/18/08 payoff amount differed from the payoff amount in the September 07 Foreclosure Notice, as there were unexplained fees and charges in each payoff figure that not only differed from one another, but were not expressly authorized in the BOG Note.

37.     Smith immediately disputed the debt and asked for validation. Bartoo and EVB did not validate the debt as required by 15 U.S.C 1692 g. The email and statement that Bartoo

sent Smith (Exhibit H) did not conform to the requirements of 15 U.S.C.1692 g allowing the customer to dispute the debt within 30 days of raising the dispute. Bartoo continued collection efforts and foreclosure threats and violated other provisions of 15 U.S.C. 1692 g.

38.     Bartoo never sent Smith any of the closing documents related to the alleged purchase of the BOG Note by EVB and EVB did not produce or tender a copy of the BOG Note purchase documents to Smith until after Smith filed suit against EVB on June 19, 2009.

39.     Bartoo's 9/18/08 outline of the BOG Note payoff information (Exhibit H) listed a payoff figure of $276,410.49, when Smith's Bank of Goochland (Exhibit G) statement on 9/18/09 listed a payoff balance under the BOG Note of $4,345.96.

40.     Bartoo's 9/18/08 outline of the BOG Note payoff figure (Exhibit H) also listed unexplained interest fees, a "discount" fee and attorney's fees in violation of 15 U.S.C.1692 f (1) as these amounts were not expressly authorized by the BOG Note.

41.     Smith objected strenuously to the foreclosure sale and informed Berkeley and EVB that the sale was improper.

42.     Smith is a single parent and the father of three children all of whom lived with Smith.

43.     Smith made his living by being a corporate financier and business consultant, was well known in the Richmond community and a publication of foreclosure on his personal residence would have been extremely damaging to his professional interests.

44..    Smith's last bank statement on the BOG Note that he received on August 4, 2009 indicated a balance of $ 14,153.15 as of December 31, 2008 (See Exhibit D ).

45.     There have been no advances under the BOG line of credit in 2009, such that the principal balance of the line is no more than $14,153.15.     .

46.    Bartoo, Berkeley and EVB refused to comply with the validation of debt provisions outlined in 15 U.S.C. 1692 g and continued to harass and make repeated threats to Smith to foreclose on his residence from September 18, 2008 through August 31, 2009 in violation of 15 U.S.C. 1692 d and other provisions of the FDCPA.

47.    Under threat of foreclosure, from February 12, 2009 to approximately June 10, 2009, Bartoo made continuing demands in phone calls and voice mail messages left with Smith on his home cell phone and office number, for Smith to deed over Smith's residence in lieu of foreclosure under the BOG Note, in which Bartoo quoted the payoff figure under the BOG note to be in excess of $ 475,000.

48.    On information and belief, although there had been no additional advances on the BOG Note since the $14,153.15 balance on December 31, 2008 (Exhibit D), Bartoo and EVB purposefully quoted Smith a false payoff figure $200,000 higher than the September 07 Foreclosure Notice in order to put extreme pressure and duress on Smith, such that Smith would deed over his residence to EVB.

49.    From February 12, 2009 to approximately June 10, 2009 Bartoo made no less than seven threats in writing to have Smith deed over his house to EVB or face immediate foreclosure proceedings while continuing to quote the payoff figure of the BOG Note to be in excess of $475,000.

50.    From February 12, 2009 up until the time of this filing and during the entire period that Bartoo (and later Berkeley) were threatening to foreclose on Smith's residence, the last bank statement Smith received on the BOG Note indicated a balance due of $ 14,153.15.

51.    In Virginia, a trustee of a deed of trust owes a fiduciary duty to all parties who are the beneficiaries of the trust. "It is the well settled doctrine in this jurisdiction that a trustee for

sale is the agent of both debtor and creditor, and as such it is incumbent upon him to act toward each with perfect fairness and impartiality...." <u>Ruth Everette and Essie Howell v. Thomas L. Howard, Trustee,</u> et als. 162 Va. 419 (1934).

52.   Berkeley, despite his fiduciary duty to Smith, sued Smith on behalf of another party in Henrico General District Court on January 21, 2009.

53.   On information and belief, Berkeley represents EVB on a continuous basis on many collection matters and derives a considerable income from the business that EVB gives him, including foreclosures.

54.   Despite Berkeley's fiduciary duty to act toward Smith and EVB with perfect fairness and impartiality, Berkeley actively represented EVB in its efforts to coerce Smith to deed the Wilton Property to EVB to satisfy the BOG Note obligation which was falsely represented to Smith by Berkeley to be over $475,000.

55.   From May 19, 2009  through June 10, 2009 , Bartoo insisted in writing  to Smith no less than 4 times, that Smith deed over his residence to EVB under the threat of foreclosure and falsely stated that  the amount of the payoff figure on the BOG Note  was  in excess of $ 475,000.

56.   In an email dated June 2, 2009, Smith again suggested to Bartoo and  EVB that he contact his attorney. Bartoo, EVB and Berkeley insisted on communicating with Smith and refused to communicate with Smith's attorney in violation of 15 U.S.C. 805(a) 2.

57.   On June 8, 2009, Berkeley sent Smith another foreclosure letter (hereafter the "June 09 Foreclosure Notice") on the Wilton Property whereby Berkeley on behalf of EVB, demanded that Smith pay EVB in excess of $475,000  to stave off foreclosure by satisfying the

BOG Note. A true and accurate copy of the June 09 Foreclosure Notice is attached hereto as **Exhibit I** and made a part hereof.

58.     Between May 27 and June 10, 2009, Smith had informed Bartoo and Berkeley no less than 6 times in writing that the BOG Note amount was grossly inaccurate, if indeed any balance was owed.

59.     On June 14, 2009 a notice of foreclosure on Smith's residence, 208 S. Wilton Road was published in the Richmond Times Dispatch and in the foreclosure notice sent to Smith, the payoff on the BOG Note was in excess of $475,000. A true and accurate copy of the published foreclosure notice is attached hereto as **Exhibit J** and made a part hereof.

60.     On information and belief, EVB and Berkeley disseminated false information to interested buyers who called in response to the foreclosure ad, as well as personal and damaging information about Smith that was misleading, untrue and very damaging to his trade, profession and personal life.

61.     After the foreclosure notice appeared in the Richmond Times Dispatch, several people who had spoken to EVB and or Berkeley appeared in front of Smith's residence and spoke to his neighbors about "the foreclosure sale" and relayed personal banking information about Smith, his businesses and the BOG Note that had been communicated to them by Berkeley, EVB or both.

62.     Despite the knowledge that the BOG Note was not owing by Smith and at a minimum was disputed with good cause, EVB and Berkeley purposefully published the foreclosure notice in an effort to harm Smith and force him to surrender the Wilton Property to EVB.

63.     After Smith's many protestations to EVB and Berkeley, on June 19, 2009 Smith and one of his business entities filed suit against EVB for EVB's defaults under prior agreements. The foreclosure on Smith's residence was cancelled again.

64.     On July 31, 2009, Berkeley sent Smith another foreclosure notice (hereafter "July 09 Foreclosure Notice"), threatening to foreclose under the BOG Note, this time stating that the BOG Note payoff amount was in $293,026.17  and again violating the provisions of 15 U.S.C. 1692 f (1) by claiming fees and charges not expressly authorized by the BOG Note, as well as continuing to refuse to validate the debt or provide proper documentation as required by the provisions of 15 U.S.C. 1692 g. A true and accurate copy of the July 09 Foreclosure Letter is attached hereto as **Exhibit K** and made a part hereof.

65.     On August 11, 2009, Smith wrote Berkeley (hereafter the "August 11, 2009 Letter) and explained that there was no balance due on the BOG Note and offered to meet with Berkeley and provide evidence that the BOG Note was paid off. A true and accurate copy of the August 11, 2009 Letter is attached hereto as **Exhibit L**  and made a part hereof.

66.     Berkeley did not respond to Smith's offer in the August 11, 2009 Letter and did not grant Smith the opportunity to provide him evidence that the BOG Note was not due and owing. Berkeley did: however, cancel the auction.

67.     On August 31, 2009, Berkeley sent Smith another foreclosure notice letter (hereafter the "August 09 Foreclosure Letter,")  which listed the balance to pay off the BOG Note as $317,423.88, an amount that was $24,397.77 more than the payoff amount listed in the July 09 Foreclosure Letter issued just 30 days prior. A true and accurate copy of the August 09 Foreclosure Letter is attached hereto as **Exhibit M**  and made a part hereof.

68.     The August 09 Foreclosure Letter listed "late charges and other fees" as $36,005.37 with no explanation or itemization of such fees, which are not authorized by the terms the BOG Note.

69.     Upon receipt of the August 09 Foreclosure Letter, Smith immediately wrote Berkeley (hereafter "September 4, 2009 Letter") and requested that he validate the debt, including fees and expenses and reminded Berkeley again that he been provided evidence that the debt was not owing. A true and accurate copy of the September 3, 2009 Letter is attached as hereto **Exhibit N** and made a copy hereof"

71.     On information and belief, EVB and Berkeley have communicated with other people and entities besides Smith and his counsel concerning the collection of any alleged amounts due under the BOG Note in violation of 15 U.S.C. 1692 c.

72.     15 U.S.C. 1692 d  prohibits debt collectors from engaging "in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

73.     In violation of 15 U.S.C. 1692 d, EVB and Berkeley have continuously harassed and abused Smith by threatening foreclosure on Smith's residence if Smith did not deed over his house to EVB, to get Smith to pay a debt that EVB knew was not owed.

74.     In an email Bartoo sent to Smith on June 2, 2009, Bartoo demanded that Smith deed over his property to EVB or face foreclosure and that Smith and his family vacate his residence immediately. A true and accurate copy of Bartoo's June 2, 2009 email is attached hereto as **Exhibit O** and made a part hereof.

75.     15 U.S.C. 1692 d  (4) specifically prohibits " [t]he advertisement for sale of any debt to coerce payment of the debt."

76.    EVB and Berkeley intentionally published a notice of foreclosure advertisement in the Richmond Times Dispatch for a debt that they knew or should have known was not due and owing to embarrass and humiliate Smith and to unjustly coerce and extract economic benefits for EVB at Smith's expense and foreclosure fees for Berkeley.

77.    EVB and Berkeley intentionally published a notice of foreclosure advertisement in the Richmond Times Dispatch for an amount that that they knew was false to embarrass and humiliate Smith and to unjustly coerce and extract economic benefits for EVB at Smith's expense and foreclosure fees for Berkeley.

78.    15 U.S.C. 1692 e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

79    EVB sent Smith a foreclosure notice in mid- September 2008 and stated that the payoff on the BOG Note was in excess of $276,000 when Smith's Bank of Goochland bank statement stated the balance under the BOG Note was not more than $4,000.

80.    From February 12, 2998 through June 10, 2008,  EVB and Berkeley repeatedly tried to get Smith to deed over his residence by threatening foreclosure under the BOG Note by using a BOG payoff amount in excess of $475,000 when Smith's last bank statement under the BOG Note stated a balance of $14,153.15  and in so doing, EVB and Berkeley violated the provisions of 15 U.S.C. 1692 e.

81.    EVB has continuously misrepresented the character, amount and legal status of the BOG Note in violation of the general provisions of 15 U.S.C. 1692 e  and more particularly 15 U.S. C. 169 2 e (2) (A).

82.     By intentionally misrepresenting the character, amount and legal status of the BOG Note, Defendants have used "false representation(s) or deceptive means to collect or attempt to collect any debt" in violation of 15 U.S.C. 1692 e (10).

83.     Defendants have violated the provisions of 15 U.S.C. 1692 f which states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

84.     In addition to violating the general provisions of 15 U.S.C. 1692 f, Defendants violated 15 U.S.C. 1692 f (1) by attempting to collect amounts such as interest, fees, charges or other expenses that are not "expressly authorized by the agreement creating the debt or permitted by law."

85.     By threatening foreclosure and trying to coerce Smith to deed over his residence, Defendants violated 15 U.S.C.1692 f (6) which prohibits [t]aking or threatening to take nonjudicial action to effect the dispossession or disablement of property if (a) there is no present right to possession of the property claimed as collateral through an enforceable security interest;..."

86.     EVB violated the provisions of 15 U.S.C. 1692 g in that EVB never sent Smith a statement as required by 15 U.S.C. 1692 g (5) which would inform Smith of EVB's obligation to obtain verification of the debt within 30 days.

87.     On September 17, 2008, Smith requested specific documents relating to the BOG Note and its purchase that Bartoo and EVB never provided and by not providing this information EVB violated 15 U.S.C. 1692 g (b).

88.     On information and belief, EVB also has violated 15 U.S.C. 1692 j which states "(a) It is unlawful to design, compile, and furnish any form knowing that such form would be

used to create the false belief in a consumer that a person other than the creditor of such

consumer is participating in the collection of or in an attempt to collect a debt such consumer

allegedly owes such creditor, when in fact such person is not participating."

89.     In each of the first three foreclosure notices Smith has received from Berkeley,

Berkeley admits that he is a "debt collector," the final page of each foreclosure notice sent to

Smith (Exhibits F, I, K and N) states as follows:

NOTICE TO DEFENDANT/OWNER:

UNLESS YOU DISPUTE THE VALIDITY OF ALL OR PART OF THE DEBT
WITHIN THIRTY (30) DAYS AFTER THE RECEIPT OF THIS NOTICE, THE
DEBT WILL BE ASSUMED TO BE VALID BY US. HOWEVER, IF YOU
NOTIFY US IN WRITING WITHIN THE THIRTY (30) DAY PERIOD THAT
ALL OR PART OF THE DEBT IS DISPUTED, WE WILL OBTAIN
VERIFICATION OF THE DEBT OR A COPY OF A JUDGEMENT TO YOU.
ALSO, UPON YOUR WRITTEN REQUEST WITHIN THE THIRTY (30)
DAYS, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF
THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT
CREDITOR. THIS COMMUNICATION IS FROM A DEBT COLLECTOR
(emphasis added). THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

90.     Despite Berkeley's representations that he would grant the debtor 30 days to

dispute the debt and that he would obtain verification of the debt, Berkeley ran a foreclosure ad

after Smith disputed the June Foreclosure Letter in writing.

91.     After Smith communicated to Berkeley in writing that his and EVB's actions

were in violation of federal statutes did Berkeley cease referring to himself as a "debt collector"

as indicated in the August Foreclosure Letter.

92..    Defendants' egregious and malicious acts to cause Smith harm and to coerce him

illegally to deed over his property in order to collect a debt Plaintiffs knew was not owed have

caused Smith much stress and anxiety.

93.     Defendants have willfully and purposefully used unlawful tactics to coerce Smith and his children out of their home and have applied extraordinary efforts to deceive Smith and to force Smith to give up his residence under duress.

94.     EVB is a bank that has approximately $ 1.1 billion in assets.  During the time EVB had been misrepresenting the payoff on the BOG Note and trying to coerce Smith into deeding his house to EVB or face foreclosure, EVB  received $24,000,000 from the federal government's Troubled Asset Relief Fund (TARP).

95.     EVB's resources to devote to legal fees and collection activities are virtually unlimited compared to Smith's.

96.     Since mid-September, 2008 Smith has had to live with the constant fear of losing his house due to Defendants' intentional and unlawful actions to coerce Smith into paying off an obligation that Defendants' know is not owed and using all of its resources to place Smith under extreme financial and emotional distress.

97.     Smith has suffered extreme mental anguish and emotional distress intentionally inflicted on him by Defendants.

98.     Smith has suffered extreme humiliation and embarrassment due to Defendants' actions in publishing a notice of foreclosure in the Richmond Times Dispatch in its efforts to get Smith to deed his residence to EVB or to payoff a debt that Plaintiffs knew was false and inaccurate.

99.     In addition, Smith has suffered extraordinary damages due to Defendants' unlawful actions, as Smith's credit which he relies on to operate his business and maintain his standard of living has been destroyed.

100.    Smith has also incurred extraordinary legal expenses and costs which have deprived him and his family of resources to effectively run their household.

101.    Smith has also incurred great loss of income due to the tremendous amount of time spent defending his residence and home from being taken by Defendants' unlawful and disingenuous acts.

102.    The mental anguish and stress Smith has suffered due to Defendants' illegal, willful and wanton actions has deprived Smith of his health, drastically affected his financial condition and inflicted much damage on Smith's family and domestic and social life.

## CLAIM FOR RELIEF FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. 1692, et seq.

103.    Smith realleges and incorporates paragraphs 1 through 102 above as if fully set forth herein.

104.    As set forth in paragraphs 1-103, Defendants violated the Fair Debt Collection Practices Act in multiple ways, including by example only and without limitation: failing to provide Smith with a copy of the allegedly "purchased" BOG Note, refusing to communicate with Smith's lawyer, purposefully quoting payoff figures known to be false, threatening phone calls and emails demanding Smith pay a sum not owed and known to be false, demanding that Smith and his family deed their residence to EVB and vacate their residence "immediately," the willful and intentional publication of a foreclosure notice Defendants knew was based on a grossly and purposefully false payoff figure, the dissemination of Smith's personal financial information to third parties to coerce Smith to pay an obligation Defendants knew to be false and other efforts to intentionally, willfully and unlawfully harass, oppress and abuse Smith in efforts

to get Smith to deed over his personal residence or pay off a grossly distorted "payoff" amount Defendants knew to be false.

105.    As a result of the Defendants' violation of the provisions of the FDCPA, the Defendants are liable to  Smith for actual and statutory damages, as well as punitive damages and damages in the form of penalties assessed against Defendants. Defendants are also liable to Smith for attorney's fees and costs pursuant to 15 USC Section 1692 k.

106.    As a result of the Defendants' violation of the FDCPA,  Smith has suffered and continues to suffer actual damages for emotional and mental anguish, humiliation and embarrassment, fear, anxiety, deprivation of his health, lost income and lost opportunity costs. Such damages are recoverable pursuant to 15 U.S.C. 1692 k.

## TRIAL BY JURY

Plaintiff demands a trial by Jury.


**WHEREFORE,** Your Plaintiff demands judgment to recover statutory damages, actual and compensatory damages, punitive damages, costs and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to the Fair Debt Collection Practices Act. The Plaintiff also seeks declaratory and injunctive relief, including, but not limited to, an Order forbidding the Defendant from further threats and coercion in violation of the Fair Debt Collection Practices Act and a declaration that the Defendants' conduct with regard to the Plaintiff violated the Fair Debt Collection Practices Act and such other relief as the Court may deem proper.

Robert C. Smith

By: Counsel

Robert C. Smith VSB 24722
Robert C. Smith, PLC
Counsel for Plaintiff
Richard Knapp and Associates, P.C.
2800 Patterson Avenue
Suite 101
Richmond, Virginia 23221
Tel: 804-377-8848, ext. 4
Fax: 804-377-8851
rob@rknappesq.com